PHILANDER G. REYNOLDS *v.* WILLIAM MCKINNEY.

*Error from Douglas County.*

Betting on elections is utterly prohibited by law.    [Comp. L., 335, § 242.]

All moneys placed in the hands of stakeholders must be regarded as deposited in his hands without consideration, to be repaid on demand to the depositor or his legally attaching creditor; the share of each depositor is subject to attachment for his debts at any time before it is paid over. *Drake on Attach.,* § 520; *Ball* v. *Gilbert,* 12 *Metc.,* 397.

Whether the depositor borrowed the money for the purposes of making an illegal bet, is immaterial, and cannot be inquired into.

The facts of the case, found by the court below, are as follows :

"That on the 7th day of November, A. D. 1864, one Edward R. Jennings and one Thaddeus Prentice laid a wager of one hundred dollars a side on the result of the election for governor of the State of Kansas, which election was to take place on the 8th day of November, A. D. 1864, and deposited the money in the hands of the said defendant as a stakeholder; that the money which the said Prentice put up as said wager was the property of one John Speer prior to the time it was put up; that the said Speer deposited the said money with the said Prentice for the purpose that said Prentice should make said wager, and that said Prentice acted as the agent of the said Speer when he deposited the said wager with the said defendant; that the said Prentice did not disclose his agency to the said defendant or to said Jennings, but made said wager as though it was his own wager; and that said defendant and said Jennings had no notice at that time that said money belonged to

said Speer; that afterwards, to wit, on the 15th day of November, A. D. 1864, the said plaintiff, as the judgment creditor of the said Prentice, had a garnishee notice served upon the said defendant, to appear before S. B. Waters, a justice of the peace in and for Palmyra township, in the county of Douglas and State of Kansas, and answer, under oath, all questions put to him touching the property, of every description, and credits, of the said Thaddeus Prentice, in his possession or under his control; that the said garnishee notice was issued by said justice at the city of Lawrence, in said county, and not in the township of Palmyra, in said county, and that the said S. B. Waters was not a justice of the peace of the said city of Lawrence; that said garnishee notice was served on the defendant by the sheriff of Douglas county, as said sheriff; that said defendant made a special appearance by attorney, and moved to dismiss said proceedings, on the ground that said sheriff was not an officer of said justice's court, and as such sheriff, cannot serve said garnishee notice, which motion said justice overruled, and thereupon the defendant excepted, and then and there appeared and answered all questions that were put to him by the attorney of the said plaintiff, and thereupon the said justice, S. B. Waters, made an order against the said defendant for him to pay over to the said plaintiff the sum of one hundred dollars, and the costs of that proceeding, taxed at sixteen dollars; that the said defendant neglected and refused to pay said money into court, or give a bond as required by law; that the said plaintiff had a judgment standing on said justice's docket, against the said Thaddeus Prentice, for the sum of one hundred dollars, which was unpaid and in full force at the time the said garnishee notice was served, and is

still unpaid. and in full force ; that the said plaintiff, William McKinney, had no notice that the money by said Prentice deposited as said wager, was the property of the said Speer ; neither had the said plaintiff any notice that the said wager had been laid until about eight days after said wager had been deposited in the hands of the said defendant as said stakeholder ; that said defendant, P. G. Reynolds, is indebted on said cause of action, as in the petition of the said plaintiff set forth, to the said plaintiff, in the sum of one hundred dollars ($100) damages, and the costs of this action, taxed at thirty-one dollars and fifteen cents."

And the court "ordered and adjudged that the plaintiff ought to recover," &c., to which defendant excepted. From this ruling the defendant below appeals.

*Hendry & Akin*, for plaintiff in error.

*Thacher & Banks*, for defendants in error.

*Hendry & Akin*, for plaintiff in error, submitted :

1. S. B. Waters, being a justice of Palmyra township, could not legally exercise the duties of his office in the city of Lawrence, without his township. § 11, *art.* 3, *Const., Comp. L., p.* 58.

2. The sheriff of the county could not serve the order of garnishment. Service could only be made by the constable of the township of the justice, his deputy, or some person specially authorized. *Comp. L.*, 620, § 29 ; 551, § 1.

3. The record failing to show service, the justice acquired no jurisdiction to make the order sued on.

4. There is no law authorizing a garnishee witness to appear without service, and proper proceedings had. In such proceeding the judgment debtor is not a necessary party, and the law must be strictly complied with to confer jurisdiction.

5. The money deposited by Prentice was the property of John Speer; Prentice being an agent only, had no claims to the money. The agent did not apply the moneys to an illegal object. *Vischer* v. *Yates*, 11 *Johns.*, 23; *Ruckman* v. *Pitcher*, 20 *N. Y.*, 9; *Yates* v. *Foote*, 12 *Johns.*, 9.

6. A principal can recover money from his agent which has been deposited with the agent for an illegal purpose, at any time before the illegal act is performed. *Bunn* v. *Riker*, 4 *Johns.*, 426; *Vischer* v. *Yates*, 11 *Johns.*, 23; 1 *Story Eq.*, §§ 295, 296, 297, 298; *Cotton* v. *Thurland*, 5 *Tenn.*, 405; *Mount & Wardell* v. *G. & R. Wait*, 7 *Johns.*, 434; *Morgan* v. *Groff*, 4 *Barb.*, 524; *Like* v. *Thompson*, 9 *do.*, 315; *Taylor* v. *Lindes*, 9 *East.*, 49; *Dunlap's Paley's Agency, p.* 62, § 8. *McAlester* v. *Hoffman*, 16 *Sarg. & R.*, 147; *Denneston* v. *Cook*, 12 *Johns.*, 376; *Story's Agency*, § 235; *Chitty on Contr.*, 575.

7. Prentice had no attachable interest in the wager after it had passed into the hands of defendant below. Chattels owned or mortgaged, are not attachable. *Drake on Attach.*, § 245; *Kupp* v. *Glover*, 15 *Lou.*, 461; *Babcock* v. *Mollier*, 7 *Martin's* (*N. S.*), 1399; *Powell* v. *Akin*, 18 *Lou.*, 321; *Bedlam* v. *Tucker*, 1 *Pick.*, 389; *Holbrook* v. *Baker*, 5 *Maine*, 309; *Thompson* v. *Stevens*, 10 *id.*, 27; *Sergent* v. *Carr*, 12 *id.*, 396; *Pecquent* v. *Swan*, 4 *id.*, 443; *Haven* v. *Low*, 2 *N. Hamp.*, 13; *Drake on Attach.*, §§ 485, 487, 458.

8. An attaching creditor can acquire, through his at-

7

tachment, no higher or better right than the judgment debtor had, except there be fraud. None appears in this case.

*Thacher & Banks*, for defendant in error, submitted :

1. The evidence on which the findings of fact are made is not given. It will be presumed that it was sufficient. (*Kupfor* v. *Sponhorst*, 1 *Kas.*, 75 ; *Pratt* v. *Miller*, 2 *id.*, 192 ; *McBride* v. *Hartwell*, 2 *id.*, 410 ; *Western Mutual Ins. Co.* v. *Duffey*, 2 *id.*, 347.) The petition is sufficiently broad to support them.

2. Appearance by the garnishee waived all irregularity in service of the notice. 5 *Abb. Dig.*, 353, §§ 14, 15 ; 1 *id.*, 190, §§ 32, 51, 52, 53, 54, 56 ; 7 *Johns.*, 207 ; 4 *Paige*, 439 ; 17 *Johns.*, 63 ; 5 *Cow.*, 15 ; 3 *How. Pr.*, 27 ; 7 *Cow.*, 366 (*Pixley* v. *Winchell*); 1 *How. Pr.*, 110 (*Mass.* v. *Raynor*); *Munn* v. *Carley*, 4 *Cow.*, 148 ; 1 *Wend.*, 13 ; 9 *How. Pr.*, 445 ; 11 *id.*, 138.

*a.* The record shows that the defendant, after specially appearing for the purpose, and moving to set aside the service, appeared generally and answered as required by the notice. This was a waiving of all irregularities in the service. (*See cases last cited.*) So held as to service of summons. (*Id.*) So held in service of "notice to plead," that being in the nature of process. 1 *Abb. Dig.*, 191, § 58 ; *Gardner* v. *Keller*, 2 *How. Pr.*, 141.

Defendant cannot appear with protest and sustain an objection to the service. (1 *Abb. Dig.*, 191, § 62 ; *Mahany* v. *Pauman*, 1 *Abb. Pr.*, 34 ; 4 *Duer*, 603 ; 2 *id.*, 635.) But if he appear, he waives irregularity in the process which brought him into court. (1 *Abb.*

*Dig.,* 191, § 64; 2 *Hill,* 362; 3 *How. Pr.,* 27; 7 *Cow.,*
366; 2 *How. Pr.,* 241; 5 *How. Pr.,* 233; 1 *id.,* 13.)   In
this case the process which brought defendant into
court was the very one he objected to, viz: the notice
of garnishment.

*b.* But the record fails to show that the point was
duly brought to the attention of the district court.
The fact of the service of the notice by the sheriff, and
that defendant made a motion before the justice, are
simply given as facts in the case; but no motion was
made, and no ruling of the court appears upon that
point.

*c.* The trial in the district court was *de novo* of
the simple fact as to whether or not the defendant
had money of Prentice's in his hands at the time of
the service of the notice.   The record shows that he
actually had the money at the time of the examination.
There is but one question remaining, and that is, was it
liable to the payment of Prentice's debts?   The pro-
ceeding before the justice was intended simply to give
defendant an opportunity to pay it over.   He refused.
This is an original action for that money, and any
irregularity in the proceedings before the justice, which
have not, on motion, or by appeal, or other proceeding
in that case, been brought before the court below,
cannot be inquired into collaterally.   The record shows
that the defendant answered before the justice, and
that the justice ordered him to pay over; that is,
the record shows that the justice had jurisdiction.
Whether the justice acquired jurisdiction regularly or
otherwise, cannot be inquired into in this original
action.

*d.* Besides, for a cause of action under the statute,
it is only necessary to establish that the garnishee

"appeared and answered" and failed to comply with the order. *Justice's Act.*, § 42, *Comp. L.*, 623.

III. The next question presented by the record, is, whether the district court erred in rendering judgment for the plaintiff on the facts found.

*a.* Garnishment is an effectual attachment of the effects of the defendant in the garnishee's hands, such as gives the right to hold the garnishee personally. *Drake on Attach.*, 352, § 453; 2 *Foster*, 196; 10 *Gruttan*, 284; 6 *Cal.*, 195; *Drake*, 350, § 452; *Comp. L.*, § 42, *p.* 623; *Drake*, § 552; 6 *Pick.*, 120.

*b.* Generally, where privity of interest and of contract are combined, the garnishee may be charged (*Drake*, § 490), but this is not always necessary. "Where there is a privity of contract, but not of interest, but the position of affairs between the garnishee and the defendant is such that to exempt the garnishee from liability would *tend* to open the door for fraud, the garnishee will be charged" (*Drake*, *p.* 391-2, § 491; *Jackson* v. *Bank U. S.*, 10 *Pa. St.*, 61), and the garnishee cannot show such privity of contract in such case, to protect himself against *his own wrong* (*Drake, p.* 392, § 491 *and note*), as when the garnishee holds property of the defendant under a fraudulent arrangement, the right of the plaintiff to hold the garnishee is not *limited* by the defendant's right against the latter. *Drake*, § 452, *p.* 350, *and* § 458, *p.* 356; 11 *Pick.*, 527.

*c.* And further illustration of the general doctrine : In all cases when one indebted to another gives an obligation to pay, to a third person, in order to make such obligation effectual to defeat an attachment of the debt, as due to the original creditor, it must be shown that the obligation to the third person was *bona*

*fide,* and upon adequate consideration. (*Drake, p.* 508, § 601; 14 *N. H.,* 82.)   No fraudulent transfer will avail.   *Drake,* §§ 523, 524, 525, 598, 599, 600, 601.

IV. The question in this case is, whether, under these general principles, the money in the defendant's hands was legally held to be subject to the payment of the judgment.

1. The money was deposited by Prentice, in the hands of defendant, on a bet involving an inquiry into the validity of the election of a public officer.   It was, therefore, illegal, and void on principles of public policy.   *Bunn* v. *Riker,* 4 *Johns.,* 726 ; *Lansing* v. *Lansing,* 8 *id.,* 454 ; *Fischer* v. *Yates,* 11 *Johns.,* 23 ; *Denneston* v. *Cook,* 12 *id.,* 376 ; *Rust* v. *Goth,* 9 *Cow.,* 169 ; *Wheeler* v. *Spencer,* 15 *Conn.,* 28 ; *Stoddard* v. *Martin,* 1 *Angell,* 1 ; *Tarleton* v. *Baker,* 18 *Vt.,* 9 ; *Smith* v. *McMaster,* 2 *Brown's* (*Penn.*) *C. P.,* 182.

*a.* Though at common law an action might be maintained on a wager not contrary to public policy (*Chitty on Contr.,* 438 (*marg.*), 615, 717 ; 1 *Tenn. R.,* 693), yet not where such bet was contrary to public policy (*Chitty p.* 439 ; 1 *Kans. R.,* 56 ; 16 *Serg. & R.,* 147 ; 9 *Barb.,* 315 ; 5 *Wend.,* 250 ; 12 *Johns.,* 1 ; 7 *Watts,* 294, 343 ; 4 *Har. & McHenry,* 284 ; 1 *Bail.,* 486 ; 12 *Metc.,* 397 ; 1 *Hale,* 300 ; 1 *Nott & McCord,* 180 ; 4 *id.,* 211), but actions on wagers of any kind were never favored.   *Chitty,* 440 [513], 441 [514].

*b.* The particular kind of wager involved in this action is prohibited by statute, by which betting and holding stakes are made penal offenses.   *Crimes Act,* § 242, *Comp. L.,* 335.   See *Chitty,* 440-1 [514].

2. Money paid on an illegal contract may be recovered back while the contract is executory.   *Rust* v. *Goth,* 9 *Cow.,* 175 ; *Morgan* v. *Groff,* 4 *Barb.,* 524.

*a.* If the loser claim money he has deposited on an illegal wager, and claim it, even after the wager is decided against him, but before it is actually paid over, the stakeholder is bound to return it to him.  2 *Pars. Contr.*, 139 ; *Dunlap's Paley's Agency*, 66 ; *Vischer* v. *Yates*, 11 *Johns.*, 23 ; *Stacy* v. *Foss*, 19 *Maine*, 335 ; *Tarleton* v. *Baker*, 18 *Vt.* (3 *Washb.*), 9 ; *Wheeler* v. *Spencer*, 15 *Conn.*, 28 ; *Moore* v. *Tippe*, 1 *Spenc.*, *N. J.*, 263 ; *McAlister* v. *Hoffman*, 16 *Serg. & R.*, 141 ; *Forest* v. *Hart*, 3 *Murphy* (*N. C.*), 458 ; *Wood* v. *Wood*, *id.*, 472 ; *Bates* v. *Lancaster*, 10 *Humph.* (*Tenn.*), 138 ; *Perkins* v. *Hyde*, 6 *Yerg.* (*Tenn.*), 288 ; *Shackleford* v. *Wood*, 3 *Ala.*, 37 ; *Wood* v. *Duncan*, 9 *Port.* (*Ala.*), 227 ; *Jeffrey* v. *Ficklin*, 3 *Pike* (*Ark.*), 227 ; *Humphreys* v. *McGee*, 13 *Miss.*, 435 ; *Merritt* v. *Neill Wright's Ohio* (*Ch.*), 472.

Though where an agent has actually paid over money on an illegal transaction, an action even by his principal against him therefor cannot prevail—a doctrine we shall refer to again (*Dunlap*, 66 ; *Smith* v. *Brumley, Doug.*, 696, *notes ;* 1 *Salk.*, 22) ; yet, "the law is somewhat different as regards a non-stakeholder.  For it has been settled by many cases that where money has been deposited in the hands of a third person, to abide the event of some illegal transaction, either of the parties may at any time insist on taking back his portion of the stakes ; and though the event had been determined, and the stakeholder had paid the money over to the winner, still, if the loser, even after the decision, but before the payment over, had expressed his dissent, the stakeholder will be bound to pay him his moiety of the stakes." *Dunlap's Paley*, *p.* 66, *note* 7 ; *Hazelton* v. *Jackson*, 8 *B. & C.*,

222, *reviewing all the cases; Dunlap's Paley*, 66 [2*d*], *citing Yates; id.*, 66 [3*d*], *note* 1.

*b.* In this class of cases, persons can avoid their contracts by alleging their own criminality. *Chitty Contr.*, 67 [574], *note* 1; 5 *Mass.*, 296; 17 *id.*, 258; 5 *Mass.*, 39; 5 *id.*, 286.

V. *a.* It may be insisted that the stakeholder, under our statute, is *in pari delicto*, and that the party to the bet (Prentice), whose debt we garnisheed, could not recover it back, and hence that there was no fund liable to the payment of his debts. This plea was introduced in most of these betting cases, and overruled. *See Morgan* v. *Goff*, 4 *Barb.*, 527, *and cases cited.*

*b.* The cases hinge on this principle: To make a defense of "illegal contract" available, the person interposing the plea must be shown to be a party in interest to the transaction which is claimed as illegal. The stakeholder, though liable to a penalty under the statute, equally with the principals in the bet, is not a party beneficially interested in the transaction, and hence is not *in pari delicto* in the sense contemplated in the cases. (*Dunlap's Paley*, 66 [3]; *Yates* v. *Foot*, 12 *Johns.*, 1 [1].) Kent, C. J., uses this language: "But this objection [the party being *in pari delicto* cannot be recovered against] is applied exclusively to the suit against the principal or winner, and there is no instance in which it has been used as a protection to the intermediate stakeholder, who, though an agent in the transaction, is no party in interest to the illegal contract.   *   *   *   The action is founded on the disaffirmance of the illegal contract.   *   *   *   * There is not a case nor a dictum that does not allow the merits of the contract to be discussed, so long as the defendant stands in the character of stakeholder.

On the affirmance of the illegal and void contract, and before its execution, and while the money remains in the hands of the stakeholder, each party ought to be allowed to withdraw his own deposits. The court will then be dealing equitably with the case. It will be answering the policy of the law, and putting a stop to the contract before it is executed. (*Dunlap*, 66 [*3d and 4th*], *cit. Vischer* v. *Yates;* 11 *Johns.*, 23 ; 12 *Johns.*, 377, 378.) It best comports with public policy to arrest the illegal proceeding before it is consummated. (*See Dunlap*, 67, *note; Wright's Ohio R. Ch.* [*Merritt* v. *Neill*], 472.) Besides, even when all parties are *in pari delicto*, and the contract is still executory, and either party paying the money is desirous of rescinding the contract, he may do so, and recover back his money." "A distinction is taken when the action is in affirmance of an illegal contract, and the object of which is to enforce its performance, and when the action proceeds in disaffirmance of such a contract and on the ground that it is void, and seeks to prevent the defendant from retaining the benefit which he had derived from an unlawful act." *Morgan* v. *Goff*, 4 *Barb.*, 527, *and cases.*

*c.* It is clear in this case that "the money is deposited to the use of the depositors respectively," and the share of each is subject to attachment for his debts at any time before it is actually paid over to the winning party. *Drake on Att.*, *p.* 425, § 520 ; *Ball* v. *Gilbert*, 12 *Metc.*, 397.

*d.* The benefit of the public, and not the advantage of the defendant, is the principle upon which a contract is allowed to be impeached on account of illegality. *Chitty on Contr.*, 576 [673].

*e.* When the parties are not *in pari delicto*, and when public policy will be advanced by allowing either

party, or at least the more excusable of the two, to sue for relief against the transaction, a court of equity will grant such relief.  *Chitty, p.* 476 [673]; 21 *L. J. C.*, 633, 651.

VI.  *a.* In this case the plaintiff is not *in pari delicto.* He seeks to reach the money that his debtor, Prentice, deposited on an illegal bet, with the defendant as stakeholder.  The notice of garnishment was served before the money was paid over to the winning party.  Prentice was that winning party.  Clearly, if Prentice could have withdrawn his "stake," we could reach it by this process under the authorities cited.  But we can do more. "The position of affairs between the garnishee and the defendant" (Prentice), was "such that to exempt the garnishee from liability would tend to open the door for fraud" or an illegal transaction.  (*Drake, p.* 391–2, § 491; *Jackson* v. *Bank U. S.,* 10 *Pa. St.,* 61.)  The courts will guard the public against corrupting bets and wagers, as well as against fraud.

*b.* The transaction between the garnishee and defendant, upon which it is sought to relieve the garnishee from liability, must be shown to be *bona fide,* and consonant with public policy.  (*Drake,* 508, § 601; 14 *N. H.,* 82; *Drake,* 425, § 520; *Ball* v. *Gilbert,* 12 *Metc.,* 397.)  A creditor may always follow the property of his debtor further than he can go himself—especially where he has endeavored to prevent its application to the payment of his debts by fraud or other act not sanctioned by public policy.  In this case the defendant cannot take advantage of neither his own illegal complicity in a void contract, nor can he set up the illegal complicity of Prentice therein.  Ours is a legal claim of an innocent creditor.  When a garnishee relies on a contract with a third person, as affecting his liability,

it must appear that such third person stood in such position as to have a legal right to enter into the contract. (*Drake*, § 596 [*p.*504]; 19 *N. H.*, 548.)

VII. *a.* But it is insisted that the money was the property of John Speer; that he made Prentice his agent. We answer: The facts found by the record, show that Prentice had the money in his possession when he "put it up." He put it up as his own. Speer has made no claim to the money. Prentice having it in his possession, in the absence of other showing, it will be presumed to have been his. (2 *Abb. Dig.*, 625, § 330; *Fish* v. *Skeet*, 21 *Barb.*, 333; *Smith* v. *Leomas*, 8 *N. Y.* [4 *Seld.*], 472.) "When one man delivers a sum of money to another, the legal presumption always is that the money belonged to the one who received it." 2 *Abb. Dig.*, 626, § 341; 1 *Stark.*, 474; *Bogert* v. *Merse*, 1 *N. Y.* (1 *Comst.*), 377; 4 *Den.*, 108; *Sweet* v. *Bunn*, 24 *Barb.*, 533.

*b.* This presumption can be destroyed only by showing some other valid transaction; for instance, if Speer loaned the money knowingly to Prentice, for the purpose of betting, Speer could not recover it, and a showing of such a loan would not destroy this presumption. (*Chitty on Contr.*, 616; *McKinnell* v. *Robinson*, 3 *M. & W.*, 434; *Web* v. *Brooke*, 3 *Taunt.*, 6; *Cannan* v. *Bryce*, 3 *B. & Ald.*, 184; 2 *Abb. N. Y. Dig.*, 69, § 584; *Staple* v. *Gould*, 9 *N. Y.* [5 *Seld.*], 520; 5 *Sandf.*, 411.) The parties, principal agent, and stakeholder, are *in pari delicto* as to this. In this case the only way to destroy the presumption is by showing a valid and legal arrangement, as we have asserted. In the same finding of the court, showing that the money was Speer's, he finds that Speer let Prentice have the money for the purpose of making that illegal bet; that Pren-

tice was agent to make the bet. To destroy the pre-
sumption that the money was Prentice's, reliance
must be had upon this contract of agency.

*c.* "The test as to whether a demand connected with
an illegal transaction, be capable of being enforced, is,
whether the party requires to rely on such transaction
in order to establish his case." (*Chitty on Contr.*,
671 [574], *note* 1 *and note b, and cases*.) No right can
be derived from any agreement made in express op-
position to the law. (*Id., note* 1, *cit.* 5, *Har. & J.*,
193). Speer and Prentice are both *in pari delicto*.

VIII. Speer could not recover the money of Pren-
tice. *Story on Agency*, 422, §344; §§195, 196, 235,
*and note*, §330; *Story Confl. L.*, §246–248; 1 *Liverm.
Agen.*, *ch.* 1, §2, *pp.* 14 *to* 21 (*ed.* 1818); *id., ch.* 8, §7,
*pp.* 46, 76, 470; *Josephs* v. *Pebeer*, 3 *Barn. & Cressw.*,
639; 6 *Rob.*, 207.

*a.* When moneys or goods are deposited with an
agent to effect an illegal object, and the moneys or
goods have been actually put into a course of execu-
tion of the illegal purpose, they cannot be recovered
from him. *Story on Agency*, *p.* 279, §235, *note* 2;
§344, *p.* 422; *Dunlap's Paley's Agency*, *pp.* 65, 66, *and
id.*, *p.* 65, *note* 9; 15 *Wend.*, 412.

*b.* The illegal transaction in this case was the "bet."
To constitute the bet, the parties to it settled upon the
terms and put up the money. Speer put the money
into the hands of Prentice for the purpose of so depos-
iting it. When Prentice put up the money in defend-
ant's hands, it had been "actually put into a course of
execution of the illegal purpose." The election, of
course, was legal, but the bet was illegal, and the money
was put up on the latter. *Dunlap's Paley*, *p.* 66, *note*
7 ‡; *Haselton* v. *Jackson*, 8 *B. & C.*, 222; *Dunlap*, 66

[2], *citing Yates* (*parallel case*); *id.*, 66 [3], *note* 1.

*c.* Neither Speer nor Prentice are parties to this suit. Speer has taken no steps, as he might have done had he a legal right to the money, to reclaim his property. The defendant in this case cannot now come in and shield himself from liability by setting up an illegal contract between the debtor and another person, both strangers to this suit, for that would be opening this action to fraudulent and illegal transactions. The court, then, did not err in holding that as between the defendant and the plaintiff, the money in his hands is liable to the payment of plaintiff's debt against Prentice.

IX. *a.* Besides the action in the court below, was one on the order of the justice, that the defendant pay over. The justice had jurisdiction; that jurisdiction was fully plead. The determination of the justice was conclusive until reversed. No steps were taken by the defendant to reverse it. The action in the court below, then, was similar to an action on another judgment. (*Drake on Attach.*, § 452, *p.* 351; *Mustale* v. *Worthington, Hemp. St.* [*C. C. U. S.*], 662; DANIELS, J.) As to definition of judgment, 1 Bouv., 676; Drake, p. 351–2, § 452. The justice act calls the determination of the justice, a judgment. § 43, *Comp. L.*, 624.

*b.* This conclusion is strengthened by the consideration that in the justice court all questions of defendant's liability could come up. (*Drake, p.* 355, § 456.) The garnishee could protect himself by extrinsic evidence, (*Drake,* § 639; 12 *Pick.*, 383; 4 *Mass.*, 85; *Just. Act,* § 47, *p.* 625, *Comp. L.*), and third persons could come in and be heard as to his rights to the property. *Comp. L.*, 625, § 47, *p.* 648, § 184, *pp.* 195–6–7, §§ 438–9–40–41.

*c.* That the adjudication is conclusive, see 3 Abb.

Dig., p. 184, § 1; 1 John. Cas., 436; 2 Barb., 586; 14 John., 63; 1 John. Ch., 91; 1 Paige, 41.    So held as to summary proceedings.    6 *N. Y.*, 137.

*By the Court,* BAILEY, J.

Betting on elections is utterly prohibited by the laws of this state.    *See* 242 *Crimes Act, Comp. Laws, p.* 335.

It follows that all money placed in the hands of stakeholders is to be regarded as placed or deposited in his hands without consideration, to be repaid on demand to the person who deposited the same, or attached by any person having a valid claim, and showing cause of attachment against the depositor.    It is a mere naked deposit, and by implication of law, it is deemed to have been deposited to the use of the depositors, respectively, and the share of each is subject to attachment for his debts at any time before it is actually paid over.    *Drake on Attachment, sec.* 520; *Ball* v. *Gilbert & Trustee,* 12 *Metcalf,* 397.

Whether the party making the bet, in this case, had money of his own, which he deposited, or borrowed it of a friend, is immaterial.    If the money was loaned for the purpose of being staked or bet contrary to law and public policy, it was incumbent on the party loaning money for such illegal purpose, to take satisfactory security.    If he neglected to do so, the courts cannot interfere for his protection.

Judgment affirmed.

All the justices concurring.